IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) Criminal No. 4:20-cr-219 |
| v. | ) |
| | ) GOVERNMENT'S |
| KENNY EUGENE SMART, | ) SENTENCING MEMORANDUM |
| also known as "Solo," | ) |
| | ) |
| Defendant. | ) |
| | ) |

I.   INTRODUCTION .................................................................................................. 1

II.  PROCEDURAL BACKGROUND ..................................................................... 2

III. SENTENCING CALCULATION....................................................................... 2

    A.   Statutory Maximum and Minimum Sentence ......................................... 2

    B.   Disputed Guideline Issues ...................................................................... 3

        1.   Factual objections ............................................................................ 3

        2.   Guideline disputes ........................................................................... 6

    C.   Sentencing Guidelines Calculation ......................................................... 8

IV.  SENTENCING FACTORS & GOVERNMENT'S RECOMMENDATION........ 8

V.   CONCLUSION................................................................................................... 12

## I.   **INTRODUCTION**

Defendant Kenny Eugene Smart is deservedly an armed career criminal. He possesses guns, deals drugs, and is a rapist. Smart has consistently committed these same crimes over several decades. Within months of being released from federal prison and while on supervised release and probation, Smart sold drugs and had a gun, as found by a jury. The Court should sentence Smart to 360 months in prison and impose a top-of-the-guideline supervised release revocation sentence consecutive to that sentence.

## II. PROCEDURAL BACKGROUND

Following a three-day jury trial, Smart was found guilty of being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2); and possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i). Presentence Investigation Report, ECF No. 170, ¶¶ 2–3 (hereinafter "PSR").

There are numerous factual and legal objections outstanding to the PSR. The government relies upon the trial transcripts and exhibits. The government anticipates the testimony of one witness, A.P. The government also attaches the following exhibits, under seal:

- Exhibit 1: Excerpt of Transcript for November 18, 2020 interview with Dionne Jennifer Dibble (8 pages)
- Exhibit 2: Interview reports of L.W. (8 pages)
- Exhibit 3: Interview reports of A.P. (15 pages)
- Exhibit 4: Text messages between Smart and A.P. (8 pages)

## III. SENTENCING CALCULATION

### A. Statutory Maximum and Minimum Sentence

Smart is an armed career criminal. Therefore, for his conviction on Count 1, he is subject to a mandatory minimum sentence of fifteen years imprisonment and a maximum sentence of up to life, a fine of up to $250,000, and a term of supervised release of up to five years. PSR ¶¶ 148, 153, 159. For his conviction on Count 2, he is subject to a consecutive five-year mandatory minimum sentence up to life imprisonment, a maximum fine of $250,000, and a term of supervised release of up

to five years. In addition, Smart is subject to a $100 special assessment per count for a total of $200. *Id.* ¶¶ 148, 149, 153, 159, 160.

### B. Disputed Guideline Issues

Smart wishes the jury had not found him guilty. But they did. ECF No. 120. Based on his status as an armed career criminal, Smart finds himself with nothing to lose by frivolously disputing the facts established at trial, or the well-settled law surrounding his status as an armed career criminal. He has already lost acceptance and earned obstruction, though the latter is unaccounted for in his guideline calculation. He now challenges the trial testimony which the jury considered and relied upon to convict him. Based on the jury's verdict and the evidence presented at trial, the facts set forth in the PSR are accurate and no changes are necessary. Further, none of the factual disputes have any impact on the guideline calculation. The Court should take Smart's frivolous objections into account in determining his final sentence.

#### 1. Factual objections

First, Smart disputes the trial testimony of B.L. PSR ¶¶ 4, 47–49. The government relies upon the trial testimony of B.L. which confirms that Smart approached B.L. in jail and asked B.L. to contact his sister, H.K., so she could not testify against Smart at trial. Trial Tr. at 448–54.

Second, Smart asserts he does not "recall" asking law enforcement to bring him his tablet. PSR ¶ 8. The government relies upon Agent Gentry's trial testimony that Smart asked Agent Gentry to bring him his tablet. Trial Tr. at 187.

Third, Smart disputes whether the Chevrolet Avalanche is his truck and says it belongs to a man named Richard. PSR ¶ 10. The government relies on Exhibit 3, which describes the truck as belonging to Smart. Gov't's Ex. 3 at 1, 4, 9.

Fourth, Smart disputes his girlfriend Dionne "Jennifer" Dibble's statements to the police on the day of the search warrant. PSR ¶ 12. The government attaches the relevant excerpts of Dibble's November 18, 2020 interview with law enforcement. Gov't's Ex. 1. Smart disputes her statement that he "smoked heavy." These were Dibble's exact words. Gov't's Ex. 1 at 2–3. Smart also disputes that he robbed someone. As accurately reflected in the PSR, Dibble reported that she heard that Smart robbed a person who owed him money and took a firearm. Gov't's Ex. 1 at 4–7.

Fifth, Smart asserts he was not at the house when L.W. arrived prior to the search warrant execution. PSR ¶ 17. The government relies upon L.W.'s testimony at trial that she saw Smart at the house and that Dibble attempted to wake Smart up so Smart could sell L.W. cocaine. Trial Tr. at 455–69.

Sixth, Smart asserts the phones found at his apartment were broken and nonfunctional. PSR ¶ 18. However, nothing in this paragraph contains contrary information to Smart's assertion. Regardless of if the phones were "nonfunctional," meaning without cell phone service or uncharged, they still had the possibility to contain evidence, such as SIM cards.

Seventh, Smart objects to the trial testimony of C.L. and H.K. PSR ¶¶ 20–26. The government relies upon their trial testimony, which confirms that Smart cooked and distributed crack and their house and possessed a gun while he did so. Trial Tr. at 402–44.

Eighth, Smart objects to facts about his rape of L.W. PSR ¶¶ 27–30. The government attaches Exhibit 2 (under seal) to prove these disputed facts by a preponderance of the evidence.

Ninth, Smart objects to the facts about his rape of A.P. PSR ¶¶ 31–44. The government intends to call a witness at sentencing to prove these disputed facts and offers Exhibits 3 and 4. Notably, Smart does not object to one of his text messages with A.P. or his text message to Marcus Hall. PSR ¶¶ 45–46. In that text message, Smart himself confirmed some of the details of the rape when he admitted he "took her to the river and spanked her with a belt 5 times." PSR ¶ 46. Smart's text messages with A.P. and his text message to Hall are corroborative of his rape of A.P.

Tenth, Smart objects that he threatened H.K. PSR ¶¶ 50–51. The government relies upon the testimony of H.K. (not heard by the jury) and the reports to prove these disputed facts by a preponderance of the evidence. Trial Tr. at 371–83; ECF No. 127. Because Smart is an armed career criminal, the obstruction enhancement was not taken into consideration in his guideline calculation. Further, if it did, the government would rely upon Smart's threats to B.L. and his pretrial conduct to support the enhancement.

**2.     Guideline disputes**

First, Smart objects that he is not an armed career criminal. PSR ¶¶ 57, 58, 64, 90, 150. Against well-settled law and the language of the statute, Smart believes that to qualify as an armed career criminal, his convictions must receive criminal history points. This is not true. There is no age limitation for convictions to qualify a defendant as an armed career criminal. 18 U.S.C. § 924(e)(1); USSG §4B1.4, n.1 ("[T]he time periods for the counting of prior sentences under § 4A1.2 . . . [are not] applicable to the determination of whether a defendant is subject to an enhanced sentence under 18 U.S.C. § 924(e)[, the Armed Career Criminal Act]."); *see, e.g.*, *United States v. Anderson*, 632 F.3d 1264, 1267 & n.3 (D.C. Cir. 2011) ("[T]he armed career criminal enhancement applies to persons convicted under 18 U.S.C. § 922(g) with at least three prior convictions for violent felonies or serious drug offenses, regardless of the age of the offenses."); *United States v. McConnell*, 916 F.2d 448, 449–50 (8th Cir. 1990) (same).

Smart's prior convictions which qualify him as an armed career criminal include three convictions for possession with intent to deliver a controlled substance in violation of Iowa law. PSR ¶¶ 73, 78, 82. This crime has repeatedly been held to qualify as a controlled substance offense. *See, e.g.*, *United States v. Brown*, 1 F.4th 617, 621 (8th Cir. 2021) (career offender); *United States v. Clayborn*, 951 F.3d 937, 939–40 (8th Cir. 2020) (career offender); *United States v. Boleyn*, 929 F.3d 932, 939–40 (8th Cir. 2019) (career offender); *United States v. Maldonado*, 864 F.3d 893, 899–901 (8th Cir. 2017). Smart's offenses qualify as "serious drug felonies" because they

are controlled substances offenses which carried a "maximum term of imprisonment of ten years or more." 18 U.S.C. § 924(e)(2)(A)(ii). Smart's convictions were all classified as Class C felonies under Iowa law, which carries a ten-year term, except for habitual offenders in which case the maximum is raised to fifteen years. *See* Iowa Code § 902.9(1)(c), (d). Smart was in fact sentenced to ten years for two of these convictions and fifteen years for the third conviction as a habitual offender. PSR ¶¶ 73, 78, 82.

Further, Smart's conviction for aggravated assault in violation of Georgia Code Section 16-5-21 qualifies as a violent felony. PSR ¶ 80; 18 U.S.C. § 924(e)(2)(B) (defining violent felony); *see United States v. Berry*, 808 F. App'x 857, 859–60 (11th Cir. Apr. 3, 2020) (concluding convictions under Georgia's aggravated assault statute qualify as a crime of violence under the guidelines); *United States v. Morales-Alonso*, 878 F.3d 1311, 1316 (11th Cir. 2018) (same).

This precedent also leads to the conclusion that a base offense level of 20 under USSG §2K2.1(a)(4)(A) applies if the firearm guidelines controlled. PSR ¶¶ 58, 82.

Next, while Smart more than deserves the obstruction of justice enhancement, because he is an armed career criminal convicted of a 924(c) offense, the enhancement has no impact on his guideline sentencing range. USSG §4B1.1(c)(2). The government instead argues this as a basis for an upward variance, rather than in support of a guideline enhancement.

## C. Sentencing Guidelines Calculation

The PSR correctly calculates the advisory guidelines range in this case as follows:

| | |
|---|---|
| USSG §4B1.4(b)(3)(B) (armed career criminal): | 33 |
| Criminal History Category | V (8) |
| Guideline Sentencing Range: | 210 to 262 months |

Count Two must be imposed consecutively, bringing the combined range to 270 to 322 months imprisonment.[1]

## III. SENTENCING FACTORS & GOVERNMENT'S RECOMMENDATION

The appropriate sentence to be imposed by the Court should be "sufficient but not greater than necessary" to meet relevant sentencing objectives, which include:

1. the nature and circumstances of the offense and history and characteristics of the defendant;
2. the need for the sentence imposed –
   A. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   B. to afford adequate deterrence to criminal conduct;
   C. to protect the public from further crimes of the defendant; and
   D. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
3. the kinds of sentences available;
4. the guideline sentencing range;
5. any pertinent policy statement;

---

[1] By operation of the guidelines, because Smart was convicted of a 924(c) offense, he avoids the offense level 34 and a criminal history category of VI, which would result in a sentencing range of 262 to 327 months. USSG §4B1.4, n.2. The government believes this is a basis for an upward departure or variance. *See* USSG §4B1.4, n. 2 (suggesting that an upward departure may be warranted where USSG 4B1.4(b)(3)(A) and (c)(2) do not apply because of the conviction under 18 U.S.C. § 924(c) and the resulting guidelines range is lower than it would have been absent that conviction). The government structures its request as an upward variance.

6.     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
7.     the need to provide restitution to any victims of the offense.

*See* 18 U.S.C. § 3553(a).

The government recommends an upward variance to a total sentence of 360 months imprisonment, followed by a ten-year term of supervised release. As part of the instant offense, Smart possessed a gun and sold crack while on federal supervised release for his previous conviction for being a felon in possession of a firearm, only months after being released from a revocation sentence, and state probation. This alone is serious conduct. The fact that this is Smart's second gun crime as an armed career criminal is incredibly aggravating and unaccounted for in his sentence.

Smart's criminal history demonstrates his continued possession of firearms and drug trafficking and his complete disregard for any conditions placed upon him. Smart's criminal history began at least by age 15, but likely earlier. PSR ¶¶ 69, 70. His first felony drug conviction happened when he was 18. *Id.* ¶ 73. He was given a suspended sentence, and within four months, he again possessed cocaine. *Id.* ¶ 76. Just two years later, he escaped from a correctional facility. *Id.* ¶ 77. At age 21, Smart was convicted again of a felony drug crime. *Id.* ¶ 78. As part of this offense, Smart began his familiar pattern of possessing a gun (a loaded Colt .38 caliber firearm) and crack cocaine. *Id.*

Eleven months after being paroled for his second drug felony, Smart raped a woman in Georgia. PSR ¶ 80. A probation violation warrant for his charge remains active to this day. *Id.*

For a third time at age 30, Smart was convicted of a drug felony during which he possessed a gun (a loaded model 27 Glock handgun), along with crack cocaine. PSR ¶¶ 82, 83. Smart was convicted in state court for the crack cocaine and in federal court for the firearm. *Id.* As an armed career criminal, Smart spent approximately fifteen years in prison. *Id.*

Yet, just five months after being released from federal prison, Smart's term of supervised release was revoked because he was convicted of operating while under the influence. PSR ¶¶ 83, 85. The evidence at trial shows that Smart continued to deal drugs after he was released from his revocation sentence in late May 2020.

But Smart's crimes following his release from federal prison did not end at gun possession and selling drugs. In the six months from his release from prison and his arrest in this case, Smart raped two women. Smart as much admitted one of the rapes in a text message with the victim when he told her "you ran off with my shit," meaning drugs, "so however I can get it I will." Gov't's Ex. 4 at 7.

And even once Smart was indicted, arrested, and in jail, Smart's crimes did not stop. A few days after his detention hearing, Smart tried to get Dibble's brother to claim possession of Smart's gun. Gov't's Exs. 11, 11A, 12, 12A.

Then, just days before his trial, Smart attempted to stop H.K. from testifying by communicating through her brother B.L.. PSR ¶¶ 47–49. And when B.L. refused, Smart threatened B.L. *Id.* And then, on the morning of the first day of trial, someone drove up to H.K. on her way to work, pointed a gun at her, and told her she was not going "downtown," which she understood as a threat not to go downtown to the courthouse. *Id.* ¶¶ 50–51. While Smart was not the one holding the gun at H.K., he undoubtedly had something to do with trying to stop H.K. from testifying. None of this is accounted for in the guidelines and is a basis for an upward variance.

Smart's history demonstrates a complete disregard for the law, and he has proven, time and time again, despite all the chances provided to him, that he is incapable of being a law-abiding citizen. He has gone above and beyond to not be held accountable for his criminal involvement in the instant offense. At age 48, Smart has shown no sign of discontinuing his lawlessness, but rather, his behavior has continued to escalate to a troubling level. A significant sentence above the guidelines is necessary to protect the public and deter Smart's inevitable future gun, drug, and violent crimes.

Smart's revocation sentence of imprisonment should be imposed consecutively to his sentence in this case. USSG §5G1.3(d) & n(4)(C); USSG §7B1.3. The government requests the Court impose a revocation sentence at the top of the guideline range, 51 months, to account for the pattern of Smart's violations, his previous poor performance on supervision, and the short amount of time between this and his prior revocation which was also based on new criminal convictions.

## V. CONCLUSION

The Court should impose a total sentence of 360 months' imprisonment, to be served consecutively to the sentence imposed in the revocation matter in Docket Number 4:03-CR-00295.

                                    Respectfully submitted,

                                    Richard D. Westphal
                                  Acting United States Attorney

By:   */s/ MacKenzie Tubbs*
       MacKenzie Benson Tubbs
       Assistant United States Attorney
       U.S. Courthouse Annex
       110 East Court Avenue, Suite 286
       Des Moines, IA 50309
       Tel: (515) 473-9300
       Fax: (515) 473-9292
       Email: mackenzie.benson.tubbs@usdoj.gov

CERTIFICATE OF SERVICE
I hereby certify that on October 15, 2021, I electronically filed the foregoing with the Clerk of Court using the CM ECF system. I hereby certify that a copy of this document was served on the parties or attorneys of record by:
____U.S. Mail ____ Fax ___Hand Delivery
__X__ECF/Electronic filing ___Other means
ASSISTANT UNITED STATES ATTORNEY
By: */s/ MacKenzie Tubbs*