IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNY EUGENE SMART,<br><br>Defendant. | **No. 4:20-cr-00219-RGE-SHL**<br><br><br>**ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL** |

## I.    INTRODUCTION

A jury found Defendant Kenny Eugene Smart guilty of possession of a firearm by a felon and possession of a firearm in furtherance of a drug trafficking offense. Smart moves for a new trial under Federal Rule of Criminal Procedure 33(a). The Government resists. For the reasons set forth below, the Court denies Smart's motion for new trial.

## II.    BACKGROUND

On November 18, 2020, law enforcement officers executed a search warrant at a residence on Clark Street in Des Moines, Iowa, and arrested Smart. *See* Trial Tr. 122:21–24, 123:8–10, 144:1–2, ECF No. 155.[1] A grand jury in the Southern District of Iowa indicted Smart on two counts related to the evidence obtained from the search of the Clark Street residence: possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count 1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C § 924(c)(1)(A)(i) (Count 2). Redacted Superseding Indictment, ECF No. 42. The matter proceeded to trial on

---

[1] The trial transcript is consecutively paginated across three volumes: Volume 1, ECF No. 154, comprises pages 1–249 of the transcript; Volume 2, ECF No. 155, comprises pages 205–522; and Volume 3, ECF No. 156, comprises pages 523–94. The Court cites to the transcript by page number without reference to the volume number or ECF number.

June 7, 2021. Jury Trial Day 1 Mins., ECF No. 102.

At trial, the Government offered the testimony of witnesses and numerous exhibits. *See* Trial Witness List, ECF No. 118; Trial Ex. List, ECF No. 119. The admitted exhibits included: a Ruger, model P95DC, 9mm caliber pistol and a photograph of the handgun; a photograph of Smart sitting on a couch with cash in his lap after he was secured at the Clark Street residence; video footage of the execution of the search warrant at the Clark Street residence; transcripts of jail calls; certified copies of a judgment and sentencing order as to Smart from the District Court for Polk County; and a DNA lab report. *See* ECF No. 118; Gov't Trial Exs. 1, 1A, 4, 9, 10, 11A, 12A, 13–14, 16, ECF Nos. 125-1 to 125-2, 125-6, 125-11, 125-13, 125-16, 125-18 to 125-20, 125-23. The lab report indicated DNA present on the seized Ruger was "consistent with" Smart's DNA profile. ECF No. 125-23 at 1.

Among the testimony presented by the Government, Lometa Welch testified she went to the Clark Street residence in the early morning hours of November 18, 2020, to buy crack cocaine from Smart but he was sleeping. Trial Tr. 461:1–8, 467:3–4, 468:21–25. Welch testified she saw Smart "[i]n a back room asleep," and a handgun "was in [Smart's] reach, within his vicinity . . . [b]eside him." *Id.* at 461:25–462:3, 462:19–22, 462:25–463:2. She had visited the Clark Street residence "at least fifteen" other times to buy crack cocaine from Smart. *Id.* at 461:9–16. This was the only time she saw Smart with a handgun. *Id.* at 468:8–11. The Government relied on Welch's testimony to demonstrate Smart possessed a handgun and to demonstrate his handgun possession was in furtherance of his distribution of crack cocaine. *See id.* at 548:2–11, 551:21–24.

Charles Loggins—Smart's uncle—and Heidi Kipnusu—Loggins's girlfriend—also testified. ECF No. 118. Loggins testified he witnessed Smart cook crack cocaine on multiple occasions, and he saw Smart with a handgun on multiple occasions. Trial Tr. 404:23–405:6,

405:14–15, 414:11–415:14. Kipnusu testified she witnessed Smart cook crack cocaine at her house multiple times, and she saw Smart with a handgun on multiple occasions. *Id.* at 433:23–434:7, 436:15–23, 437:4–11. The Government pointed to this evidence to support Smart's possession of a firearm in furtherance of a drug trafficking crime. *See id.* at 551:21–24, 552:6–553:21.

Special Agent Matthew Jenkins of the Bureau of Alcohol, Tobacco, Firearms, and Explosives testified about obtaining a search warrant to conduct a buccal swab of Smart for DNA evidence, and about drug trafficking and drug dealers. *Id.* at 301:22–302:24, 327:9–328:10. Detective Carter also testified about drug trafficking, drug dealers, and indicia of drug trafficking. *Id.* at 474:19–22, 478:18–479:9. Des Moines Police Officer Hannah Brigman testified about collecting DNA evidence from the handgun located at the Clark Street residence. *Id.* at 330:17–19, 332:23–333:23. Eric Parry, the author of the DNA report, testified about collecting DNA evidence and DNA analysis generally, and about the DNA analysis in Smart's case. *Id.* at 336:20–352:19. Parry testified he received a DNA sample taken from the handgun and Smart's buccal swab. *Id.* at 351:3–4. He also testified the sample from Smart's buccal swab was "consistent" with the sample from the handgun. *Id.* at 351:7–11. Des Moines Police Officer Michael Ploeger and Urbandale Police Sergeant Nicholas Hazel testified about executing the search warrant at the Clark Street residence. *Id.* at 150:9–154:24, 164:21–170:23.

Finally, the Government presented evidence Smart attempted to intimidate witnesses. The Government presented a transcript of a phone call between Smart and his girlfriend Dionne Dibble in which Smart directed her to convince her brother to "say he was missing something, a weapon of some type." ECF No. 125-16 at 3. The Government also presented a transcript of a call between Smart and Avery Dibble in which Smart questioned why Avery Dibble did not "listen to his sister." ECF No. 125-18 at 7. Finally, the Government provided testimony by Kipnusu's brother, Brian Larson. ECF No. 118; Trial Tr. 448:15–18. Larson, who was then in custody at the Polk County

jail, testified that about two weeks before trial Smart asked him "to . . . put [Kipnusu] up in a hotel or something so she wouldn't be able to come to court." Trial Tr. 448:6–7, 450:17–20. Based on evidence presented at trial, the jury convicted Smart on both counts. Jury Verdict, ECF No. 120.

Now before the Court is Smart's motion for a new trial. ECF No. 162. The Government resists. ECF No. 165. The parties do not request oral argument. *Id.*; ECF No. 162. Because the parties' briefing and exhibits adequately present the issues, no hearing is required. *See United States v. Losing*, 539 F.2d 1174, 1177 (8th Cir. 1976).

Additional facts are set forth below as necessary.

## III. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 33(a), a court may grant a defendant's request for a new trial "if the interest of justice so requires." The district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. McClellon*, 578 F.3d 846, 857 (8th Cir. 2009) (internal quotation mark and citations omitted). A district court should grant a new trial "only if the evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred." *United States v. Starr*, 533 F.3d 985, 999 (8th Cir. 2008) (internal quotation marks and citation omitted). The Court has broad discretion to consider a defendant's motion for new trial. *See United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004). But the Court must exercise its authority to grant a new trial "sparingly and with caution." *McClellon*, 578 F.3d at 857 (internal quotation marks and citation omitted). A court should not grant a motion for a new trial "simply because it would have reached a different verdict." *United States v. Bertling*, 510 F.3d 804, 808 (8th Cir. 2007).

## IV. DISCUSSION

Smart argues a new trial is warranted because: 1) his trial counsel was ineffective; 2) the Government failed to produce exculpatory evidence before trial, in violation of *Brady v. Maryland*;

3) the Court erred in evidentiary rulings; 4) the Court erred in instructing the jury; and 5) the evidence weighs heavily against the verdicts and a miscarriage of justice may have occurred. Def.'s Br. Supp. Mot. New Trial 3–11, ECF No. 162-1 (citing 373 U.S. 83 (1963)).

The Government resists, arguing Smart cannot demonstrate his trial counsel was ineffective and the undisclosed evidence is not exculpatory or material. Gov't's Br. Supp. Resist. Mot. New Trial 5–9, ECF No. 165-1. The Government also argues no evidentiary or jury instruction errors occurred. *Id.* at 9–17. Finally, the Government argues the evidence at trial overwhelmingly supports the verdicts. *Id.* at 17.

The Court addresses each argument in turn. Smart fails to demonstrate the interest of justice requires a new trial or the evidence weighs so heavily against the verdicts a miscarriage of justice may have occurred. As such, the Court denies Smart's motion for new trial.

### A.      Trial Counsel

Smart argues his trial counsel was ineffective for various reasons. *See* ECF No. 162-1 at 5–7. He contends these errors deprived him of a fair trial and violated his Sixth Amendment right to effective assistance of counsel. *Id.* at 5. The Government resists, arguing Smart's trial counsel's decisions were not unreasonable and did not prejudice Smart. ECF No. 165-1 at 5–6. The Court addresses each allegation of trial counsel's ineffective performance in turn. Because Smart fails to demonstrate trial counsel's performance was unreasonable, a new trial is not warranted on this ground.

To obtain relief on a claim of ineffective assistance of counsel under the Sixth Amendment, a defendant must show counsel's performance was professionally unreasonable and the defendant was prejudiced by such performance. *Strickland v. Washington*, 466 U.S. 668, 691–92 (1984); *accord Davis v. United States*, 858 F.3d 529, 532 (8th Cir. 2017). To demonstrate deficient performance, the defendant must "show that counsel's representation fell below an objective

standard of reasonableness." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (quoting *Strickland*, 466 U.S. at 688). Generally, to show prejudice, a defendant must demonstrate a reasonable probability that, but for the deficient performance, the outcome of the criminal proceeding would have been different. *See Strickland*, 466 U.S. at 693–94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The Court need not address both prongs of the *Strickland* test if the defendant makes an insufficient showing on one. *Id.* at 697.

### 1.     DNA evidence

Smart argues trial counsel was ineffective for failing to obtain a DNA expert witness to testify as to the unreliability of touch DNA; to seek independent analysis of the DNA evidence found on the handgun; to establish circumstances contributing to DNA contamination; and to move to suppress the results of Smart's buccal swab. ECF No. 162-1 at 5. The Government resists, arguing trial counsel effectively challenged the DNA evidence at trial. ECF No. 165-1 at 5. The Government contends an independent DNA expert "would have been fruitless" due to the high percentage match between the DNA on the handgun and Smart's DNA. *Id.*

Smart fails to demonstrate trial counsel's performance as to the DNA evidence was professionally unreasonable. *Cf. Strickland*, 466 U.S. at 691–92. Trial counsel cross-examined witnesses about the DNA collection and analysis in this case to highlight circumstances of DNA contamination, unreliability of touch DNA, and DNA transfer. Trial counsel questioned whether Agent Jenkins or anyone else obtained buccal swab samples from others present at the Clark Street residence when the search warrant was executed. *See* Trial Tr. 322:16–25. Agent Jenkins confirmed no other samples were taken. *Id.* Trial counsel also questioned Officer Brigman, who swabbed the handgun for DNA, about allegedly missing DNA samples from

the handgun. *Id.* at 334:4–9. Finally, trial counsel extensively cross-examined Parry, who analyzed the DNA evidence. *See id.* at 352:25–363:2. Trial counsel inquired into details about primary and secondary DNA transfer; general uncertainties in DNA testing and specific uncertainties in Smart's case; cross-contamination in laboratories; information DNA testing does not provide; DNA sources; and whether Parry was aware of missing DNA samples from the handgun obtained at the Clark Street residence. *See id.* at 356:3–357:21 (DNA transfer), 352:25–353:23 (uncertainties in DNA testing), 357:22–358:23 (cross-contamination), 353:24–355:3 (information DNA does not provide), 360:8–19 (DNA sources), 361:18–24 (missing DNA samples).

Trial counsel's closing argument relied on testimony obtained during cross-examination to undermine the Government's case. To cast doubt on the Government's theory, trial counsel emphasized Parry's testimony about the uncertainties as to DNA evidence in this case. *Id.* at 568:3–569:14. Based on Parry's cross-examination testimony, trial counsel went so far as to suggest Smart's DNA could have been transferred to the handgun via seminal fluid contained in underwear on the floor where the handgun was located. *Id.* at 569:7–14. Given trial counsel's methodical and comprehensive cross-examination of multiple witnesses and cohesive closing argument undermining the Government's case, Smart fails to show trial counsel was professionally unreasonable. *Cf. Hill*, 474 U.S. at 57.

Trial counsel's decision as to a rebuttal DNA expert was also not professionally unreasonable. *Cf. Strickland*, 466 U.S. at 691–92. Rather than subject a defense expert to the Government's scrutiny, trial counsel attempted to discredit Parry through skillful cross-examination. *Cf. Holder v. United States*, 721 F.3d 979, 990 (8th Cir. 2013) (finding trial counsel was not ineffective when he chose to cross-examine the Government's expert rather than present a rebuttal expert). For example, trial counsel was able to get Parry to concede multiple

times he could not rule out the transfer of DNA through secondary transfer and he had experienced reagent contamination in his two years of analyzing DNA. *See* Trial Tr. 356:15–357:16, 358:4–6, 363:11–364:5. During Parry's cross-examination, trial counsel brought out details directing the jury's attention to the technical aspects of DNA transfer and analysis. As to counsel's strategic decisions at trial, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the Court's "scrutiny of counsel's performance [is] highly deferential." *Holder*, 721 F.3d at 990 (internal quotation marks omitted). Nothing in the record suggests trial counsel's strategy "falls outside the wide range of reasonable trial strategy afforded to counsel." *Id.* at 991. Because Smart fails to establish the deficient performance prong, the Court need not address whether he was prejudiced. Smart fails to show ineffective assistance of counsel.

### 2. Rebuttal witnesses and evidence

Smart argues trial counsel failed to call Jennifer Dibble or Cory Turner as witnesses and failed to follow up when proposed defense witness Richard Wood did not appear to testify. ECF No. 162-1 at 5–6. He also argues trial counsel failed to present evidence to rebut law enforcement officers' testimony about the execution of the search warrant. *Id.* at 6. The Government contends Smart cannot demonstrate trial counsel's decisions amounted to ineffective assistance of counsel. ECF No. 165-1 at 6–7.

Smart fails to demonstrate trial counsel's performance regarding rebuttal witnesses was professionally unreasonable. *Cf. Strickland*, 466 U.S. at 691–92. "The decision not to call a witness is a virtually unchallengeable decision of trial strategy." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (internal quotation marks and citation omitted). Given the nature of Jennifer Dibble's and Turner's potential testimony—that they knew Smart to be a drug dealer—and their questionable credibility—Dibble as Smart's girlfriend and Turner as a federally convicted drug

dealer—it was not unreasonable for trial counsel to decide "the potential costs of calling the witnesses outweighed the potential benefits." *See id.*; *see also* Def.'s Exs. A, B, R, S Supp. Mot. New Trial, ECF Nos. 176-1 to 176-2, 176-9 to 176-10; J. Criminal Case, *United States v. Turner*, No. 4:20-cr-00188-RGE-HCA-5 (S.D. Iowa Oct. 14, 2021), ECF No. 1029. As to Wood, trial counsel subpoenaed him and was in contact with Wood prior to his failure to appear. Trial Tr. 501:19–25. There is no indication trial counsel knew Wood would not appear. Trial counsel did not exhibit a "lack of diligence in preparation and investigation" as to Wood. *Armstrong v. Kemna*, 534 F.3d 857, 864 (8th Cir. 2008); *see Jackson v. United States*, 956 F.3d 1001, 1007 (8th Cir. 2020) (finding trial counsel was not ineffective for failing to subpoena witnesses when counsel was in contact with those witnesses who failed to appear to testify). Trial counsel's decisions regarding rebuttal witnesses were not professionally unreasonable. *Cf. Hill*, 474 U.S. at 57.

Trial counsel's decision as to evidence rebutting law enforcement officers' testimony regarding the execution of the search warrant was also reasonable. *Cf. Strickland*, 466 U.S. at 691–92. Trial counsel cross-examined Detective Carter about drug dealers' use of multiple phones and the lack of drugs found during the search. *See* Trial Tr. 488:16–489:11. Detective Carter's testimony provided an alternative reason for the phones. *See id.* During closing arguments, trial counsel emphasized the lack of drug evidence. *Id.* at 569:15–570:20. Trial counsel's choices reflect reasonable professional judgments. *Cf. Holder*, 721 F.3d at 990. Smart fails to show ineffective assistance of counsel on this ground.

### 3.     Cross examination

Smart argues trial counsel failed to question Welch about inconsistencies in her statements regarding the events at the Clark Street residence on November 18, 2020. ECF No. 162-1 at 6–7. Smart also contends trial counsel did not cross-examine Kipnusu or Loggins about discussing

the case with each other prior to trial. *Id.* at 7. The Government argues trial counsel was not ineffective. ECF No. 165-1 at 6.

Smart fails to demonstrate trial counsel's cross examination of witnesses was professionally unreasonable. *Cf. Strickland*, 466 U.S. at 691–92. Welch, Kipnusu, and Loggins were important witnesses for the Government. They connected Smart to the handgun and his possession of the handgun to his drug trafficking activity. Trial counsel comprehensively cross-examined of each witness, successfully probing their inconsistencies and disparate recollections of the events of this case. For example, trial counsel was able to get Loggins to concede that he "didn't always say" he saw Smart cook crack. Trial Tr. 425:13–16. Trial counsel also highlighted Loggins's grand jury testimony that was inconsistent with his trial testimony. *Id.* at 427:14–428:16. Additionally, trial counsel cross-examined Welch about her statements concerning the events on November 18, 2020, at the Clark Street residence. *See, e.g.*, *id.* at 463:21–464:2. Trial counsel specifically asked Welch about Smart's location based on a photograph of the Clark Street residence from November 18, 2020. *Id.* at 464:4–265:5. Trial counsel attempted to cross-examine Welch about other inconsistent statements, but she denied the inconsistencies counsel highlighted. *Id.* at 465:16–21. During closing argument, trial counsel highlighted aspects of each witness's testimony and their incentives to testify for the Government. Trial counsel urged the jury to consider these inconsistencies during deliberation. *See*, *e.g.*, *id.* at 562:17–567:2. The United States Court of Appeals for the Eighth Circuit has stated "[i]n hindsight, there are few, if any, cross-examinations that could not be improved upon. If that were the standard of constitutional effectiveness, few would be the counsel whose performance would pass muster." *Willis v. United States*, 87 F.3d 1004, 1006 (8th Cir. 1996). On this record, there is no indication trial counsel's performance in cross-examination fell below a reasonable standard. *Cf. Strickland*, 466 U.S. at 691–92. Smart

fails to show ineffective assistance of counsel on this ground.

Smart fails to demonstrate trial counsel's performance fell below a professionally reasonable standard. As such, a new trial is not warranted due to ineffective assistance of counsel. Because Smart fails to demonstrate trial counsel was ineffective, he cannot show he was deprived of a fair trial on this ground. The Court denies Smart's motion for new trial on this ground.

### B. Undisclosed Evidence

Smart argues the Government violated *Brady* by failing to disclose a June 2021 interview report containing statements by Turner and the full pole camera video footage from the Clark Street residence on the morning of November 18, 2020. ECF No. 162-1 at 7; Def.'s Reply Supp. Mot. New Trial 3–4, ECF No. 175; *see also* ECF No. Def.'s Ex. C Supp. Mot. New Trial, ECF No. 176-3 (June 2021 Interview); Def.'s Ex. F Part I Supp. Mot. New Trial; Def.'s Ex. F Part II Supp. Mot. New Trial.[2] The Government argues this evidence is inculpatory and Smart fails to demonstrate it is material. ECF No. 165-1 at 7–8; Gov't's Sur-Reply Supp. Resist. Def.'s Mot. New Trial 4, ECF No. 184. Because Smart fails to demonstrate the undisclosed evidence was material, a new trial is not warranted on this ground.

A new trial may be warranted when the prosecution fails to disclose "evidence favorable to an accused." *Brady*, 373 U.S. at 87; *see also United States v. Bagley*, 473 U.S. 667, 678 (1985). A failure to disclose violates a defendant's "due process [rights] where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

---

[2] Exhibits D–L supporting Smart's motion for new trial are electronic exhibits. *See* ECF No. 176. Smart provided physical copies of these exhibits to the Court. The Court expects counsel to file placeholders and maintain exhibits in accordance with the local rules. *See* LR 1(l), 5, 83E(f); LCrR 57B.

*Brady*, 373 U.S. at 87. "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995) (quoting *Bagley*, 473 U.S. at 682). A *Brady* violation is established by showing the undisclosed "evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 435.

"A showing of materiality does not require demonstrating by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id.* at 434. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* The Court considers the effect of the undisclosed evidence "collectively, not item by item." *Id.*

The Government's failure to disclose a June 2021 interview report containing Turner's statements did not violate *Brady*. *Cf.* 373 U.S. at 87. In Turner's June 2021 statements, he indicated he never observed Smart with a handgun and Smart did not know how to cook crack cocaine. ECF No. 176-3 ¶¶ 7, 11. Turner's June 2021 statements did not provide the defense with information it did not already have. In Turner's February 2021 statements—disclosed to Smart in April 2021—Turner shared the same information. Def.'s Ex. A Supp. Mot. New Trial ¶¶ 17, 25, ECF No. 176-1; 176 at 1. Failure to disclose Turner's June 2021 statements could not reasonably be understood to put the whole case in a different light so as to undermine the Court's confidence in the verdicts. *Cf. Kyles*, 514 U.S. at 435. As such, a new trial is not warranted due to the Government's failure to disclose Turner's June 2021 statements.

Although the Government failed to timely disclose the full pole camera footage from the Clark Street residence on November 18, 2020, a new trial is not warranted because this

evidence is not material. *Cf. Bagley*, 473 U.S. at 678; *see* Def.'s Ex. F Part I Supp. Mot. New Trial; Def.'s Ex. F Part II Supp. Mot. New Trial. First, the pole camera footage does not provide Smart with evidence previously unknown to him. Prior to trial, Smart knew Welch visited the Clark Street residence with a friend and knew Harper was not at the residence when the search warrant was executed. *See* ECF No. 176; Def.'s Exs. M–Q Supp. Mot. New Trial, ECF Nos. 176-4 to 176-8. The full pole camera video footage does not change these facts. Second, the Government's failure to disclose the full pole camera footage does not undermine the Court's confidence in the jury's verdicts. *Cf. Kyles*, 514 U.S. at 435. The full pole camera footage does not demonstrate the information Smart had before trial is false or deficient. Its disclosure does not change the information Smart had in preparation for trial. As such, the full pole camera video footage does not provide new or probing material that could be reasonably taken to put the case in a different light. *Cf. id.*

The full pole camera footage is also not exculpatory. Ultimately, what the pole camera video footage depicts is uncertain. Smart argues the full pole camera footage is exculpatory because it contradicts Welch's statements to law enforcement that when she and her friend visited the Clark Street residence on November 18, 2020, Harper was there. ECF No. 175 at 2–3. The Government provided Smart with a section of the footage it alleged depicted Welch arriving and then departing from the Clark Street residence. *See* ECF No. 175 at 2; ECF No. 176; Def.'s Ex. D Supp. Mot. New Trial. Smart contends the full pole camera footage shows no individuals depart from the residence after the alleged clip of Welch arriving and departing from the Clark Street residence. ECF No. 175 at 3; *see* Def.'s Ex. F Part II Supp. Mot. New Trial at 9:10–16:30. He argues this indicates Harper was not at the Clark Street residence as Welch stated. ECF No. 175 at 3. The alleged footage of Welch shows a car with at least one individual arrive at the residence, someone exits the car, enters the residence, and returns

to the car a short time later. *See* Def.'s Ex. D Supp. Mot. New Trial; *see also* Def.'s Ex. F. Part II Supp. Mot. New Trial 8:05–9:10. However, the full pole camera footage shows a different car with two individuals arriving at and departing from the Clark Street residence, after the alleged clip of Welch. Def.'s Ex. F Part I Supp. Mot. New Trial at 17:19–19:00. This footage could very well be Welch. The Court cannot discern individual faces in the footage. The footage presents one angle of one view of an entrance to the Clark Street residence and shows multiple people entering and exiting the Clark Street residence. *See generally* Def.'s Ex. F Part I Supp. Mot. New Trial; Def.'s Ex. F Part II Supp. Mot. New Trial. It is grey and grainy. Because it is unclear what the full pole camera footage shows, its omission does not undermine Welch's statements. As such, its omission does not undermine the Court's confidence Smart received a fair trial. *Cf. Kyles*, 514 U.S. at 434.

The Government's failure to disclose Turner's June 2021 interview report and the full pole camera video prior to trial is unacceptable. The Stipulated Discovery and Protective Order required the Government to disclose "[w]itness [s]tatements," "materials gathered during the investigation by whatever means," and "*Brady* materials," among other things. Stipulated Discovery & Protective Order ¶¶ 2–3, ECF No. 144. Additionally, an "individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf . . . and disclose known, favorable evidence rising to a material level of importance." *Kyles*, 514 U.S. at 437. Whether the Government's "failure to disclose is in good faith or bad faith, [its] responsibility . . . is inescapable." *Id.* at 437–38. Disclosure ensures trust in the Government as "the representative . . . of sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). The Court and the public hold the Government to the highest ethical standards. And the Court expects the Government to thoroughly and timely comply with its discovery obligations in this

and every case. However, the undisclosed evidence was not material. As such, the Court denies Smart's motion for new trial on this ground.

### C.    Evidentiary Rulings

Smart argues the Court erred in evidentiary rulings, depriving him of a fair trial. ECF No. 162-1 at 8–10. The Government resists. ECF No. 165-1 at 10–15. The Court addresses each evidentiary issue in turn. Because Smart fails to demonstrate the Court's evidentiary rulings were in error and affected his substantial rights or influenced the jury's verdicts, the Court denies his motion for new trial.

When a motion for a new trial is based on an improper evidentiary ruling, a new trial is warranted if the district court erred in admitting evidence and the error had a substantial influence on the jury's verdict. *United States v. Oleson*, 310 F.3d 1085, 1091 (8th Cir. 2002). "An evidentiary error is harmless when, after reviewing the entire record, [the Court] determine[s] . . . the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." *United States v. McPike*, 512 F.3d 1052, 1055 (8th Cir. 2008) (internal quotation marks and citation omitted).

### 1.    Smart's prior convictions

Smart argues the Court erred in admitting evidence about the nature of his prior state felony convictions under Federal Rules of Evidence 403 and 404(b). ECF No. 162-1 at 8. The Government argues Smart's prior convictions were properly admitted as Rule 404(b) evidence and to demonstrate he was previously convicted of a felony—an essential element of Count 1. ECF No. 165-1 at 10–11. The Government also argues the Court's limiting instruction to the jury reduced any "arguable prejudice that resulted from the admission of Smart's convictions." *Id.* at 11.

Federal Rule of Evidence 404(b) permits evidence of prior crimes for purposes other

than to show propensity. Fed. R. Evid. 404(b). "Rule 404(b) is a rule of inclusion that permits evidence of prior crimes to show a defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *United States v. Monds*, 945 F.3d 1049, 1052 (8th Cir. 2019) (internal quotation marks and citation omitted).

> The evidence must be (1) relevant to a material issue raised at trial, (2) similar in kind and not overly remote in time to the crime charged, (3) supported by sufficient evidence to support a jury finding that the defendant committed the other act, and (4) of probative value not substantially outweighed by its prejudicial effect.

*Id.*

"[E]vidence of prior possession of drugs, even in an amount consistent only with personal use, is admissible to show such things as knowledge and intent of a defendant charged with a crime in which intent to distribute drugs is an element." *United States v. Hardy*, 224 F.3d 752, 757 (8th Cir. 2000) (internal quotation marks and citation omitted). "When admitted to show intent, the prior acts need not be duplicates, but must be sufficiently similar to support an inference of criminal intent." *United States v. Walker*, 470 F.3d 1271, 1275 (8th Cir. 2006) (internal quotation marks and citation omitted).

Finally, relevant evidence may be excluded if its probative value is "substantially outweighed" by "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Court did not err by admitting evidence of Smart's prior felony convictions. *See* Fed. R. Evid. 404(b). As the Court stated in its order on the parties' motions in limine, Smart's prior state felony convictions "are relevant to and similar in kind to the crimes charged" against Smart in this case. Order Re: Mots. Lim. 3, ECF No. 99. Smart's prior state felony convictions met the *Monds* requirements for admission at trial. *See id.* at 3–5. Smart provides no authority demonstrating the admission of his prior state felonies was erroneous

or substantially prejudiced him. *Cf. Oleson*, 310 F.3d at 1091. Because Smart's prior felonies demonstrated Smart's knowledge, motive, and intent, the Court did not err in admitting them. *Cf. Hardy*, 224 F.3d at 757.

The probative value of Smart's prior felony convictions was not substantially outweighed by Rule 403 considerations. *See* Fed. R. Evid. 403. As explained above, the Court's limiting instruction minimized any risk of unfair prejudice. The Court's instruction also prevented confusion about the issues by directing the jury as to its use of the prior felony convictions. *See id.* Finally, the prior convictions did not involve subject matter that could have caused the jury to decide the issues on "an improper basis." *See United States v. Levine*, 477 F.3d 596, 601 (8th Cir. 2007) (internal quotation marks and citations omitted). As such, the Court properly admitted the prior felony convictions.

Even if the Court erred in admitting Smart's prior felony convictions, any error did not affect Smart's substantial rights or influence the verdicts. *Cf. McPike*, 512 F.3d at 1055. In its order, the Court noted Smart could have stipulated to his status as a felon in order to prevent the admission of the state felonies. ECF No. 99 at 5; *see also Old Chief v. United States*, 519 U.S. 172, 190–92 (1997). Smart chose not to stipulate to his felon status. The Court instructed the jury it could not rely on Smart's previous felonies as propensity evidence. Final Jury Instr. 10, ECF No. 122. This instruction limited any prejudicial effect from admitting Smart's prior felony convictions. *Cf. United States v. Drew*, 9 F.4th 718, 724–25 (8th Cir. 2021) (holding district court did not abuse its discretion admitting the defendant's prior convictions when it included a limiting instruction as to Rule 404(b) evidence). Even if the Court erred in admitting Smart's prior felony convictions, any error was harmless.

### 2. Jail calls

Smart argues the Court erred by admitting calls Smart made while he was in custody to

his girlfriend and her brother. ECF No. 162-1 at 9. Smart argues the Court improperly characterized the jail calls as demonstrating "consciousness of guilt." *Id.* The Government argues the jails calls were properly admitted. ECF No. 165-1 at 12.

Assuming proper foundation is made or stipulated to, jail calls can be relevant and admissible. *See United States v. Allee*, 299 F.3d 996, 1002 (8th Cir. 2002) (affirming jail calls were admissible as relevant and probative where the jury could have inferred from defendant's statements he was attempting to implicate others in the crimes charged); *United States v. Zierke*, 618 F.3d 755, 759 (8th Cir. 2010) (finding prejudicial effect did not outweigh the probative value of defendant's jail calls expressing a desire to harm witnesses when the district court instructed the jury about its consideration of the calls).

The Court did not err by admitting the jail calls. *Cf. Allee*, 299 F.3d at 1002. As the Court explained in its order on the parties' motions in limine, "the information contained in the calls [was] relevant to demonstrate consciousness of guilt." ECF No. 99 at 7. The Court found a jury could infer from the calls that Smart attempted to persuade his girlfriend to direct her brother to tell police her brother lost a weapon. *Id.* The jail calls were admitted with redactions, and the Court instructed the jury it could consider evidence of Smart's attempt to influence a witness. *See* Gov't's Trial Exs. 11A, 12A, ECF Nos. 125-16, 125-18; ECF No. 122 at 6; *cf. Zierke*, 618 F.3d at 759. These precautions limited any unfair prejudice to Smart from the admission of the jail calls. *See* Fed. R. Evid. 403.

Even if the Court erred in admitting the jail calls, such error was harmless. *Cf. McPike*, 512 F.3d at 1055. Compelling evidence demonstrated Smart possessed the handgun in furtherance of his drug trafficking activities. *See infra* Part IV.C.4; Part IV.E. Witnesses testified they observed Smart with the handgun while he cooked, bagged, and sold crack cocaine. *See* Trial Tr. 404:23–405:6, 405:14–15, 414:11–415:14, 433:23–434:7, 436:15–23,

437:4–11; ECF No. 125-23. DNA evidence from the handgun matched a DNA sample taken from Smart. *Id.* at 351:7–11; ECF No. 125-23. Additionally, law enforcement officers testified about the indicia of drug trafficking activity, which matched witnesses' observations of Smart. *See, e.g.*, *id.* at 474:19–22, 478:18–479:9. Collectively this evidence provided substantial independent support for the jury's verdicts. Considering all the supporting evidence, the admission of the jail calls did not have a substantial influence on the jury's verdicts. *Cf. Oleson*, 310 F.3d at 1091. A new trial is not warranted on this ground.

### 3.   Witness's prior theft convictions

Smart argues the Court erred by excluding Kipnusu's prior theft convictions. ECF No. 162-1 at 9. The Government resists, arguing the convictions were properly excluded. ECF No. 165-1 at 14. The Government contends the prior convictions were too old, were not committed by fraudulent or deceitful means, and any error in their exclusion was harmless. *Id.* at 14–15.

Rule 609(a) of the Federal Rules of Evidence requires the admission of a criminal conviction against a witness for impeachment purposes if "the court can readily determine that establishing the elements of the crime require proving . . . a dishonest act or false statement." Fed. R. Evid. 609(a)(2). However, "if more than ten years have passed since the witness's conviction or release from confinement for [the crime]" evidence of the conviction is only admissible if "its probative value . . . substantially outweighs its prejudicial effect" and the proponent gives notice of its intent to use the conviction. Fed. R. Evid. 609(b)(1)–(2).

"[T]he meaning of 'dishonesty or false statement' is intended to be limited to: ' . . . offense[s] in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing upon the accused's propensity to testify truthfully.'" *United States v. Yeo*, 739 F.2d 385, 387 (8th Cir. 1984) (quoting H.R., Fed. R. Evid.,

Conf. Rep. No. 1597, 93d Cong., 2d Sess., p. 9 (1974)). The Eighth Circuit "has suggested that theft is not a crime involving 'dishonest or false statement' within the meaning of Rule 609(a)(2)." *Id.* Additionally, the Eighth Circuit has stated "convictions over ten years old generally do not have much probative value and . . . should be admitted very rarely and only in exceptional circumstances." *United States v. Felix*, 867 F.2d 1068, 1073 (8th Cir. 1989) (internal quotation marks and citation omitted). The district court has discretion in admitting prior convictions over ten years old. *See id.* Finally, limiting "the cross-examination of a government witness does not violate the Sixth Amendment unless the defendant shows that '[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense] counsel been permitted to pursue his proposed line of cross-examination.'" *United States v. Anderson*, 783 F.3d 727, 748 (8th Cir. 2015) (alterations in original) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)).

The Court properly excluded Kipnusu's prior theft conviction. *Cf. id.*; *Yeo*, 739 F.2d at 387. First, Kipnusu's theft conviction was greater than ten years old. *See* Fed. R. Evid. 609(b). Smart provides no indication as to "exceptional circumstances" warranting admission of the conviction. *Cf. Felix*, 867 F.2d at 1073. Additionally, the theft giving rise to Kipnusu's conviction did not involve deception. *Cf. Yeo*, 739 F.2d at 387. The parties addressed the issue of admitting the conviction based on its nature of crimen falsi. *See* Gov't's Suppl. Mot. Lim. Re: Rule 609 Convictions, ECF No. 100; Trial Tr. 17:2–23. Trial counsel acknowledged the conviction was not "identified as theft by deception." Trial Tr. 17:22–18:7. The Court found the conviction was for "traditional theft[ ] and not theft[ ] that would demonstrate deception as part of [its] accomplishment." *Id.* at 18:22–19:3. Given the age and nature of the conviction, the Court properly excluded it. *Cf. Yeo*, 739 F.2d at 387.

Even if the Court erred in excluding Kipnusu's theft conviction, the error was harmless.

*Cf. McPike*, 512 F.3d at 1055. Trial counsel extensively cross-examined Kipnusu, and she admitted she had lied to law enforcement officers. Trial Tr. 440:21–441:1. Trial counsel also called a witness who testified Kipnusu had a reputation for untruthfulness. *See id.* at 512:2–15. As the Court explains in this order, significant evidence supported the jury's verdicts. *See supra* Part IV.C; *infra* Part IV.E. Smart fails to demonstrate admission of Kipnusu's theft conviction would have shifted the jury's perception of Kipnusu to the extent of changing its verdicts. *Cf. Anderson*, 783 F.3d at 748; *McPike*, 512 F.3d at 1055. A new trial is not warranted on this ground.

### 4.   Larson's Testimony

Smart argues Larson's testimony was improperly admitted. ECF No. 162-1 at 9–10. He contends trial counsel was not granted adequate time to investigate and contest the evidence. *Id.* The Government resists, arguing Larson's testimony was relevant and properly admitted. ECF No. 165-1 at 12–13.

Relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence and . . . the fact is of consequence in determining the action." Fed. R. Evid. 401. "The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

The Court did not err in admitting Larson's testimony. *See* Fed. R. Evid. 402; Fed. R. Evid. 403. Trial counsel objected to and made a record as to the admission of evidence related to witness intimidation, including Larson's testimony. Trial Tr. 256:8–257:13. The Court overruled trial counsel's objection finding the evidence was "relevant to an issue at trial." *Id.* at 258:15–18. The Court found any prejudicial effect of the evidence was limited because the Government did not introduce related video evidence demonstrating Larson and

Smart were in custody. *Id.* at 258:19–24. The Court also directed the Government not to emphasize Smart was in custody when the interaction with Larson occurred. *See id.* at 258:25–259:3. The Court also addressed timeliness of the disclosure of Larson's testimony. The Court held timeliness was not a reason to exclude the evidence because the evidence was "based upon the defendant's own actions occurring on the eve of trial and not of any untoward conduct by the Government in terms of delay or suppression of relevant evidence." *Id.* at 259:13–19. Like the jail calls, Larson's testimony as to witness intimidation was relevant to show Smart's consciousness of guilt. *See* Fed. R. Evid. 402. The Court properly instructed the jury it could consider Larson's testimony as evidence demonstrating consciousness of guilt, limiting any prejudice from Larson's testimony. ECF No. 122 at 7; *see* Fed. R. Evid. 403. Smart provides no authority indicating Larson's testimony was improperly admitted. On this record, there is no indication Larson's testimony was improperly admitted.

Even if the Court erred in admitting Larson's testimony, such an error was harmless. *Cf. McPike*, 512 F.3d at 1055. In light of the considerable evidence presented against Smart, there is no indication Larson's testimony had a substantial influence on the jury's verdicts. *Cf. Oleson*, 310 F.3d at 1091. Other evidence of Smart's attempts to intimidate a witness was admitted. *See* ECF Nos. 125-16, 125-18. As described above, compelling evidence demonstrated Smart possessed the handgun in furtherance of his drug trafficking activities. *See supra* Part IV.C.2; *infra* Part IV.E. Evidence included eyewitness testimony about Smart's possession of the handgun while cooking, bagging, and selling crack cocaine, and matching DNA evidence taken from the handgun and Smart. *See* Trial Tr. 351:7–11, 404:23–405:6, 405:14–15, 414:11–415:14, 433:23–434:7, 436:15–23, 437:4–11; ECF No. 125-23. Law enforcement officers also testified about their observations of Smart on the night the search warrant was executed. *See, e.g.,* Trial Tr. 141:3–6, 141:19–142:1, 142:22–143:6, 145:5–146:21. Other

evidence about the indicia of drug trafficking activity corroborated these observations. *See, e.g.*, *id.* at 474:19–22, 478:18–479:9. The evidence presented at trial provided substantial independent support for the jury's verdicts. Any error in admitting Larson's testimony was harmless. A new trial is not warranted on this ground.

### 5.    Photograph

Finally, Smart contends Government's Exhibit 4—the photograph of Smart with cash on his lap—should not have been admitted. ECF No. 162-1 at 10; Gov't's Trial Ex. 4, ECF No. 125-6. He contends it is a staged photo and not a correct likeness of the scene it purported to represent. *Id.* The Government resists, arguing the photograph was relevant, not unfairly prejudicial, and any error in its admission was harmless. ECF No. 165-1 at 13.

The Court did not err in admitting the photograph. *See* Fed. R. Evid. 402 The photograph was relevant. *See* Fed. R. Evid. 401. Law enforcement officers' testified that drug traffickers often keep large amounts of cash on them. *See* Trial Tr. 474:19–22. The photograph showed Smart on the night the search warrant was executed with money that had fallen from his pockets. *See* ECF No. 125-6. Such image, considered in conjunction with trial testimony, made the fact that he was a drug trafficker more probable. ECF No. 125-6. Any prejudicial effect from the photograph was lessened by Officer Hall's testimony. *See* Trial Tr. 144:3–10. Officer Hall testified when he ordered Smart to the ground during the execution of the search warrant, the money fell out of Smart's pocket. *Id.* Once Smart was secured and asked for his money back, Officer Hall placed it on Smart's lap. *Id.* Because the photograph was relevant and its context explained in the trial testimony, it was not unfairly prejudicial. As such, the photograph was properly admitted.

Even if the Court erred in admitting the photograph, such an error was harmless. *Cf. Oleson*, 310 F.3d at 1091. As discussed above, other substantial evidence provided support

for the jury's verdicts. *See supra* Part IV.C.3; Part IV.C.4; *infra* Part IV.E. Eyewitness testimony and DNA evidence connected Smart's possession of the handgun to his drug trafficking activity. *See id.* Additionally, trial counsel conducted voir dire on Officer Hall after the Government moved to admit the photograph. Trial Tr. 142:22–143:6. Officer Hall's testimony indicated the photograph was taken after the execution of the search warrant and depicted Smart after officers secured the Clark Street residence. *Id.* Considering the substantial evidence supporting the jury's verdicts and testimony regarding the context for the photograph, its admission did not have a substantial influence on the jury's verdicts. *Cf. Oleson*, 310 F.3d at 1091. Any error in admitting the photograph was harmless. A new trial is not warranted on this ground.

### D.     Final Jury Instructions

Smart argues the Court erred by instructing the jury about influencing a witness (Final Instruction 6) because evidence as to influencing a witness was admitted in error. ECF No. 162-1 at 11. Smart also argues the instruction defining "in furtherance of" (Final Instruction 12) "improperly excluded the defendant's requested instruction defining it as . . . 'during and in relation to.'" *Id.* The Government resists, arguing the jury was properly instructed. ECF No. 165-1 at 15–16.

Jury instructions are not erroneous if "taken as a whole, they fairly and adequately instruct the jurors on the applicable law." *United States v. Kent*, 531 F.3d 642, 653 (8th Cir. 2008). The Court "will not reverse a judgment based on an alleged error in instructing a jury unless that error was prejudicial." *Wolfe v. Gilmour Mfg. Co.*, 143 F.3d 1122, 1124 (8th Cir. 1998). "[A] new trial is necessary only when the erro[neous instruction] misled the jury or had a probable effect on the jury's verdict." *Slidell, Inc. v. Millennium Inorganic Chems.*, 460 F.3d 1047, 1054 (8th Cir. 2006).

The Court did not err by instructing the jury on influencing a witness in Final

Instruction 6. *Cf. Wolfe*, 143 F.3d at 1124. The Court instructed the jury:

> Attempts by the defendant to influence a witness in connection with the crime charged in this case may be considered by you in light of all the other evidence in the case. You may consider whether this evidence shows consciousness of guilt and determine the significance to be attached to any such content.

ECF No. 122 at 7. As discussed above, the Court did not err in admitting the redacted jail calls. *See supra* Part IV.C.2. Including an instruction to the jury about how to consider properly admitted evidence is not erroneous. Final Instruction 6 did not mislead the jury. *Cf. Slidell, Inc.*, 460 F.3d at 1054. It provided a correct statement of the law. Evidence of attempts to influence witnesses is admissible, and "it [is] for the jury to say what weight should be given to [such evidence]." *United States v. Hall*, 565 F.2d 1052, 1055 (8th Cir. 1977). The Court utilized the instruction for influencing a witness as set forth in the 2018 Eighth Circuit Model Criminal Jury Instructions. 8th Cir. Criminal Jury Instr. § 4.09 (2018).[3] This instruction correctly set forth the law regarding the jury's consideration of evidence of influencing a witness. As such, the Court did not err in instructing the jury on Final Instruction 6. *Cf. Kent*, 531 F.3d at 654.

The Court did not err in instructing the jury on the definition of "in furtherance of" in Final Instruction 12. *Kent*, 531 F.3d at 653. Count 2 of the Indictment charged Smart possessed a firearm "in furtherance of a drug trafficking crime."[4] ECF No. 42. After instructing on the elements of Count 2, the Court further instructed the jury:

> The phrase 'in furtherance of' should be given its plain meaning, that is, the act of furthering, advancing, or helping forward. The phrase 'in furtherance of' is a

---

[3] Shortly after trial, the Eighth Circuit released the 2020 Model Criminal Jury Instructions. 8th Cir. Criminal Jury Instr. (2020). The 2020 Model Instruction as to influencing a witness did not change from the 2018 Model Instruction. *Compare id.* at § 4.09, *with* 8th Cir. Model Jury Instr. § 4.09 (2018).

[4] The Indictment did not charge the alternate means of violating 18 U.S.C. § 924(c)—using or carrying a firearm during and in relation to a drug trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A); *United States v. Kent*, 531 F.3d 642, 653 (8th Cir. 2008).

requirement that the defendant possess the firearm with the intent that it advance, assist, or help commit the crime, not that it actually do so.

ECF No. 122 at 14. Final Instruction 12 did not mislead the jury. *Cf. Slidell, Inc.*, 460 F.3d at 1054. It correctly stated the law. *Cf. Kent*, 531 F.3d at 653. In *United States v. Kent*, the Eighth Circuit stated "[t]he term 'furtherance' as used in § 924(c) should be given its plain meaning, the act of furthering, advancing, or helping forward." *Id.* at 654 (internal quotation marks and citation omitted). The court noted "'[i]n furtherance of' requires a slightly higher standard of participation than the language 'during and in relation to,' such that 'during and [in] relation to' is encompassed by the broader language 'in furtherance of.'" *Id.* (internal quotation marks and citation omitted); *see also United States v. Rush-Richardson*, 574 F.3d 906, 911 (8th Cir. 2009) ("We noted our case law has determined that 'in furtherance of' is a slightly higher level of participation than 'during and in relation to.'" (internal quotation marks and citation omitted)). The Court used the definition of "in furtherance of" as set forth in the 2018 Eighth Circuit Model Criminal Jury Instructions in force at the time of trial. *See* 8th Cir. Criminal Jury Instr. § 6.18.924C (2018). The Court declined to include the language "during and in relation to" trial counsel advocated for in Final Instruction 12 because "[t]he instructions accurately set forth what it means to be 'in furtherance of.'" Trial Tr. 389:19–25. Final Instruction 12 correctly stated the definition of "in furtherance of" under the law as defined by *Kent*.[5] As such, the Court did not err in instructing the jury on Final Instruction 12. *Cf. Kent*, 531 F.3d at 654.

Because Smart fails to demonstrate the jury instructions incorrectly stated the law,

---

[5] Shortly after trial, the Eighth Circuit released the 2020 Model Criminal Jury Instructions. The 2020 Model Instructions define "in furtherance of" as follows: "The phrase 'in furtherance of' means furthering, advancing, or helping forward. This means the government must prove that the defendant possessed the firearm with the intent that it advance, assist or help commit the crime, but the government need not prove that the firearm actually did so." *Id.* § 6.18.924(C). This instruction did not substantively change the definition of "in furtherance of" set forth in the 2018 Model Instructions. *Compare id.*, *with* 8th Cir. Criminal Jury Instr. § 6.18.924(C) (2018).

the Court denies Smart's motion for a new trial on this ground.

### E.   Sufficiency of the Evidence

Smart argues the evidence in this case weighs heavily against the jury verdicts. ECF No. 162-1 at 3. He contends evidence of constructive possession and "the potential presence of some amount of touch DNA" are insufficient to support the jury's guilty verdicts. *Id.* Smart also argues Welch, Loggins, and Kipnusu were not credible witnesses, their testimony "varied wildly," and they all admitted to being paid to lie to law enforcement officers or write false letters on behalf of other defendants. *Id.* at 3–4. The Government resists, arguing overwhelming evidence supported the jury's verdicts. ECF No. 165-1 at 17. The Government contends the handgun had substantial amounts of Smart's DNA on it; witness testimony demonstrated Smart cooked crack cocaine, sold it, and often possessed a handgun when he was cooking crack cocaine; and evidence demonstrating Smart attempted to intimidate witnesses showed consciousness of guilt. *Id.*

"A district court may grant a new trial for insufficiency of the evidence only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Dowty*, 964 F.3d 703, 708 (8th Cir. 2020) (internal quotation marks and citation omitted). "[T]here is no requirement that the government produce direct evidence of a defendant's guilt." *United States v. Worman*, 622 F.3d 969, 977 (8th Cir. 2010). When considering a motion for new trial based on sufficiency of the evidence the Court "need not view the evidence most favorably to the verdict, but must weigh the evidence and evaluate the credibility of the witnesses." *Id.*

The Government's case against Smart was based on constructive possession of the handgun and possession of that handgun in furtherance of drug trafficking activities. "Constructive possession requires that the defendant has dominion over the premises where

the firearm is located, or control, ownership, or dominion over the firearm itself. Constructive possession may be established by circumstantial evidence alone, but the government must show a sufficient nexus between the defendant and the firearm." *United States v. White*, 915 F.3d 1195, 1198 (8th Cir. 2019) (internal quotation marks and citation omitted). "[C]onstructive possession requires knowledge of the presence of a firearm . . . ." *United States v. White*, 816 F.3d 976, 985 (8th Cir. 2016) (internal quotation marks and citation omitted). "[T]he defendant's control over the area where the weapon was found . . . gives rise to a strong inference of knowledge," which "may be rebutted if other evidence contradicts it." *United States v. Dooley*, 580 F.3d 682, 686 (8th Cir. 2009).

Evidence presented at trial demonstrated Smart's constructive possession of the handgun. *Cf. White*, 915 F.3d at 1198. Evidence of Smart's DNA on the handgun found near Smart's location and possessions in the Clark Street residence connected Smart to the handgun. *See* Trial Tr. 348:23–24, 351:7–20. Loggins and Kipnusu testified they had seen Smart with a handgun in their apartment multiple times. *Id.* at 414:11–415:2, 436:14–437:3. Kipnusu and Loggins also testified the handgun at trial was the handgun Smart carried and they had witnessed Smart with that handgun at the Clark Street residence. *Id.* at 415:18–24, 416:2–6, 437:10–2; *see* ECF No. 119; Gov't's Trial Exs. 1, 7, ECF No. 125-1, 125-9. Welch testified she saw the handgun near Smart while he was sleeping at the Clark Street residence on November 18, 2020; and law enforcement officers testified that when they executed the search warrant they found the handgun in a back room Smart had just exited. Trial Tr. 127:22–128:12, 150:22–151:14, 166:3–22, 187:9–13. The DNA evidence and witness testimony demonstrated a "nexus" between Smart and the handgun. *Cf. White*, 915 F.3d at 1198. The Government presented substantial circumstantial evidence for the jury to conclude Smart constructively possessed the handgun. *Cf. United States v. Boykin*, 986 F.2d 270, 274 (8th Cir. 1993) (finding sufficient

28

evidence of constructive possession of a firearm where the evidence showed the defendant's "personal belongings were in the bedroom where the firearms were located").

Evidence presented at trial demonstrated Smart possessed the handgun in furtherance of drug trafficking activity. Loggins's and Kipnusu's testimony about Smart's drug trafficking activities while he possessed a handgun—such as cooking, selling, and bagging crack cocaine at their apartment—tied Smart's possession of the handgun to his drug trafficking activity. Trial Tr. 405:1–6, 406:9–22, 409:5–410:12, 433:21–434:9. Law enforcement officers testified about indicia of drug traffickers—that drug traffickers often have multiple phones to avoid detection and large amounts of cash in small denominations from selling drugs. *Id.* at 327:9–328:10, 474:19–22, 478:18–479:9. Photographic evidence and officer testimony demonstrated Smart had large amounts of cash in small denominations when he was arrested. *See* ECF No. 125-6; Gov't's Trial Ex. 3, ECF No. 125-5. Evidence of multiple phones found in Smart's location also corroborated law enforcement officers' testimony and demonstrated Smart engaged in drug trafficking activity. *Id.* at 170:15–23. Agent Jenkins also testified that drug traffickers use baggies to distribute personal use amounts of drugs to their clients. *Id.* at 220:1–7. Loggins and Kipnusu testified to running errands for Smart to acquire baggies, observing him bag crack cocaine to sell, and observing him with large amounts of cash. *Id.* at 407:4–18, 413:20–24, 435:10–16, 436:5–13. This was sufficient circumstantial evidence to demonstrate Smart possessed a firearm in furtherance of drug trafficking activity. *Cf. Lopez*, 42 F.3d at 467.

On this record, substantial evidence supports the jury's guilty verdicts. The evidence does not weigh against the jury's verdicts and no miscarriage of justice has occurred. *Cf. Dowty*, 964 F.3d at 708; *see also Starr*, 533 F.3d at 999. A new trial is not warranted on this ground.

## V.   CONCLUSION

The Court denies Smart's motion for a new trial. No miscarriage of justice has occurred.

Smart fails to demonstrate trial counsel's representation fell below a professionally reasonable standard. Smart also fails to demonstrate the Government violated *Brady* such that a new trial is warranted. The Court did not err in the evidentiary rulings Smart contests, and to the extent the Court erred, any error was harmless in light of the overwhelming evidence at trial. The Court accurately instructed the jury on the law. The overwhelming evidence at trial was more than sufficient to support the jury's verdicts.

Accordingly, **IT IS ORDERED** that Defendant Kenny Eugene Smart's Motion for New Trial, ECF No. 162, is **DENIED.**

**IT IS SO ORDERED.**

Dated this 24th day of November, 2021.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE